## WILLIAMS *v.* KENNEDY, sheriff, *et al.*

1. Where a levy is made upon the property of a defendant in fi. fa., and the grounds upon which he seeks to prevent a sale thereof can be set up in an affidavit of illegality, he can not ordinarily resort to a court of equity and obtain an injunction for this purpose.

(*a*) If an affidavit of illegality tendered to a levying officer is such that it is proper for him to accept it and arrest the sale, his refusal to do so gives the defendant in fi. fa. tendering such affidavit the right to resort to a court of equity to prevent a sale of his property.

(*b*) If the affidavit of illegality tendered to the levying officer is such that he is authorized to refuse to accept it, a court of equity will not enjoin a sale by the officer because of such refusal.

2. Where an execution issuing upon a judgment against the principal and several sureties, rendered in the superior court, is not placed upon the general execution docket in accordance with the provisions of the Civil Code, § 2779, providing that unless an execution issued upon a judgment rendered in the superior court is placed upon the general execution docket within 10 days after its rendition, the lien of the judgment shall not attach "as against the interests of third parties acting in good faith and without notice, who may have acquired a transfer or lien upon the defendant's property," and that when the execution is placed upon the general execution docket after such 10 days, the lien of the judgment shall date from such entry; and several months after the rendition of such judgment the execution is levied upon the property of one of the sureties, the latter surety is not discharged from liability because of the mere failure of the creditor to have the execution so placed upon the execution docket, thereby permitting to be lost the lien of the judgment on the property of the principal and other sureties by reason of their having disposed of their property subject to such judgment, after its rendition, to purchasers acting in good faith and without notice of such judgment.

3. Where a judgment is rendered against a principal and several sureties, and a stay bond is given by the principal which prevents the collection of the judgment for 60 days, the plaintiff in execution has the right to collect the amount due on the same by a levy and sale of the property of either of the sureties in the original judgment, without levying on the property of the principal or of either of such other sureties, or of the surety on the stay bond.

APRIL 15, 1910.

Petition for injunction.    Before Judge Rawlings.    Tattnall superior court.    July 16, 1909.

*L. L. Thomas* and *H. H. Elders,* for plaintiff.

*H. C. Beasley,* for defendants.

HOLDEN, J.    The plaintiff in error filed his equitable petition for injunction against the defendants in error, making, among others, substantially the following allegations.    The Athens Savings Bank obtained judgment against the M. E. Carter Company, principal, and others named as indorsers, among whom was the plaintiff. The principal gave a stay bond, and, after the expiration of sixty days from the time the bond was given, execution was issued upon the judgment and was levied upon described property of the plain-

tiff, who filed with the levying officer an affidavit of illegality, a copy of which was attached to the petition. The sheriff refused to accept the illegality, and advertised the property for sale. H. C. Beasley was attorney for the Bank, and the other defendant, Kennedy, was the sheriff advertising the property for sale. The plaintiff asked that time be given, if necessary, to make the Athens Savings Bank a party to the case, and prayed for an injunction against the sale of the property. Upon the hearing for an interlocutory injunction the affidavit of illegality and other evidence was introduced. The defendants filed a plea alleging that the affidavit of illegality filed with the sheriff and rejected by him "was insufficient in law to retard the progress of said fi. fa. or to in any wise interfere with the collection of the same," and that for this reason it was rejected by the sheriff. The defendants also filed a demurrer, in which, among other grounds, it was averred that there was no cause of action set out in the petition, and that the plaintiff "has his complete remedy at law, if he has any remedy, by affidavit of illegality." To the order of the court refusing to grant an interlocutory injunction the plaintiff excepted.

1. Where a levy is made upon the property of a defendant in fi. fa., and the grounds upon which he seeks to prevent a sale thereof can be set up in an affidavit of illegality, he can not ordinarily resort to a court of equity and obtain an injunction for this purpose. *Rogers v. Atkinson*, 1 *Ga.* 12; *Roney v. McCall*, 128 *Ga.* 249 (57 S. E. 503); *Hart v. Lazaron*, 46 *Ga.* 396; *Russell v. O'Dowd*, 48 *Ga.* 474 (3); *Matthews v. Gelders*, 129 *Ga.* 103 (58 S. E. 649); *Rice v. Macon*, 117 *Ga.* 401 (43 S. E. 773); *Hitchcock v. Culver*, 107 *Ga.* 184 (33 S. E. 35). If an affidavit of illegality tendered to the levying officer was such as made it proper for the officer to accept it and arrest the sale, his refusal to do so would give the defendant in fi. fa. tendering the affidavit of illegality the right to resort to a court of equity and obtain an injunction to prevent a sale of his property. *Clary v. Haines*, 61 *Ga.* 520; *Newton Mfg. Co. v. White*, 47 *Ga.* 400, 402. If the affidavit of illegality was such as authorized the levying officer to refuse to accept it, a court of equity will not enjoin a sale by the officer because of such refusal. *McCandless v. McKibben*, 99 *Ga.* 129 (24 S. E. 872).

2. If the plaintiff was discharged as a surety by reason of the conduct of the plaintiff in fi. fa., he could set up such discharge in

an affidavit of illegality and upon the trial thereof obtain a judg-
ment of the court adjudicating that he was discharged from any
further liability as surety.   *Hambrick* v. *Crawford, 55 Ga.* 335;
*Griffin* v. *Frick & Co., 97 Ga.* 219 (23 S. E. 833) ; *Stanford* v.
*Connery, 84 Ga.* 731 (11 S. E. 507) ; *Bowen* v. *Groover, 77 Ga.*
126; *Lowry* v. *Richards, 62 Ga.* 370.   One of the grounds of the
affidavit of illegality filed by the plaintiff was that the judgment
was rendered in the superior court of Bryan county, and the plain-
tiff in fi. fa. and its attorney have failed to place the execution is-
sued upon the judgment upon the general execution docket of that
county, and have permitted the principal and the cosureties of the
plaintiff to dispose of their property, and have thus increased the
liability of the plaintiff, and have, as matter of law, by their own
act and without any consent of the plaintiff, discharged the plain-
tiff from further liability.   The Civil Code, § 2779, provides that
unless an execution issued upon a judgment rendered in the su-
perior court is placed upon the general execution docket within 10
days after its rendition, the lien of the judgment shall not attach
"as against the interests of third parties acting in good faith and
without notice, who may have acquired a transfer or lien upon the
defendant's property," and that when the execution is placed upon
the general execution docket after such 10 days, the lien of the
judgment shall date from such entry.   If the plaintiff in fi. fa. fails
to have such execution entered upon the general execution docket
within 10 days, and before such entry the defendants, including the
principal and all of the sureties except one, dispose of their property
subject to such judgment, thereby permitting such property to
cease to be so subject in the hands of purchasers who bought the
same bona fide and without notice of the judgment, is the one who
does not dispose of his property discharged from the lien of the
judgment?

In 32 Cyc. 222, it is said : "While it has been held, particularly
in earlier decisions, that a surety is not discharged by failure of
the creditor to record the instrument evidencing the obligation,
such as a mortgage, in consequence of which the security is lost,
especially if the surety did not request the creditor to record the
instrument, there are later cases to the contrary.   Thus it has been
held that a surety is discharged by the omission of the creditor to
file a warrant of attorney, or a bill of sale, whereby the benefit of

the security is lost to the surety." See, in this connection, the following decisions of this court upon the subject of the surety being discharged upon the failure of the creditor to have recorded a mortgage taken at the time the debt was created: *Toomer* v. *Dickerson,* 37 *Ga.* 428; *Atlanta National Bank* v. *Douglass,* 51 *Ga.* 205 (21 Am. R. 234). Also see *Cloud* v. *Scarborough,* 3 *Ga. App.* 7 (59 S. E. 202). In the case of *Lumsden* v. *Leonard,* 55 *Ga.* 374, the 4th headnote is as follows: "Mere non-action by the creditor will not release the surety, unless such non-action makes unproductive some collateral security, such as a mortgage, or is based upon a consideration paid by the principal debtor to the creditor, or he is notified under the statute to collect the debt." The failure on the part of the creditor to make effective the collateral security given by the principal debtor, or a cosurety, at the time the debt was created and the contract of suretyship entered into differs from the failure of the creditor to make effective the lien of a judgment against the principal debtor, or a cosurety. It has been held in many cases that the positive act of the creditor resulting in injury to the surety, or in the increase of his risk or liability, would discharge him, whether such act be committed before or after judgment. In the case of *McCarter* v. *Turner,* 49 *Ga.* 309, it was ruled that where suit was brought against the principal and the surety on a note, and the creditor dismissed the action as to the principal, the surety was discharged. On page 312 the court said: "A creditor can not, by voluntarily bringing suit, thus discharge the surety from the necessity of giving the notice, put him at ease and off his guard, and then, after the lapse of a considerable time, it may be after protracted litigation, suddenly, of his own motion, dismiss the action as to the principal and claim the payment of the debt from the surety." In the case of *Hall* v. *Pratt,* 103 *Ga.* 255 (29 S. E. 764), it was ruled: "An accommodation indorser of a promissory note, sued jointly with the maker thereof, was not discharged merely because the plaintiff, after an entry of 'default' had been made upon the judge's docket, permitted one or more terms to elapse before entering up a final judgment in the case;" and in referring to the case of *Hayes* v. *Little,* 52 *Ga.* 555, wherein it was held that the surety was discharged where a verdict was rendered against the principal and the sureties at the January term, 1868, and no judgment was rendered upon such verdict until the

April term, 1874, on page 257 the court distinguished it from the case it was then deciding, and said, "We are not disposed to extend further the doctrine there laid down." Some of the other cases holding that the positive act of the creditor which increases the risk or liability of the surety, or injures him, will discharge him, are as follows: *Lewis* v. *Armstrong, 47 Ga.* 289; *McCarter* v. *Turner,* 49 *Ga.* 309; *Curan* v. *Colbert,* 3 *Ga.* 239 (46 Am. D. 427); *Griffeth* v. *Moss, 94 Ga.* 199 (21 S. E. 463); *Ward* v. *McLamb,* 118 *Ga.* 811 (45 S. E. 688).

There is a difference between a case where the risk or liability of the surety is increased, or he is injured, by a positive act of a creditor, and one where his risk or liability is increased, or he is injured, by the mere failure of the creditor to act. Especially does this difference exist where the conduct of the creditor in failing to take action relates to the pursuit of his legal remedy. Civil Code, § 2972, provides: "Any act of the creditor, either before or after judgment against the principal, which injures the surety or increases his risk, or exposes him to greater liability, will discharge him," but this section also provides that "a mere failure by the creditor to sue as soon as the law allows, or negligence to prosecute with vigor his legal remedies, unless for a consideration, will not release the surety." In the present case, the creditor prosecuted the suit to a finality and obtained judgment, which was a general lien on all the property of all of the defendants. His mere failure to place the execution on the general execution docket, and the disposition of their property by the principal defendant and all of the sureties except one, so as to cause such property not to be subject to the operation of the lien of the judgment, would not discharge the latter either completely or pro tanto. In the case of *Lilly* v. *Roberts,* 58 *Ga.* 363, it was held: "If the creditor, for no consideration except the principal's promise to pay the debt or a part of it, postpones the sale until the next sale-day, and in the meantime the debtor claims the property as exempt, and thereby discharges it from the levy, his surety is not discharged." In the case of *Crawford* v. *Gaulden,* 33 *Ga.* 173, it was held: "Where there has been no levy made upon the property of a principal in judgment, and no notice given by the surety to proceed against the property of his principal, the rules of law regarding forbearance are the same after judgment as before.

Mere forbearance towards the principal, in the absence of notice from the surety to proceed against the former, does not discharge the latter. A promise to forbear, for a definite time, will not discharge surety, unless it be a promise binding in law upon the creditor, 'such as will tie his hands.'" In the case of Lumsden v. Leonard, 55 Ga. 374, it was ruled: "The removal of personal property from one county in the State to another, by the principal judgment debtor, will not discharge the surety, though it be permitted by the plaintiff, without action on his part, and without the surety's consent, and though the property would be sufficient to satisfy the fi. fa., no consideration being paid to the creditor by the principal debtor. . . The neglect by the judgment creditor for four years to levy upon real estate sold by the principal debtor to a purchaser, who holds possession until the real estate sold is discharged from the lien of the judgment, will not discharge the surety, though such real estate be sufficient to satisfy the fi. fa., there being no proof, or offer to prove, that the judgment creditor was notified in writing, or otherwise, to levy, and no tender of expenses by the surety." And on page 376 the court said: "Some act must be done by the creditor, either before or after judgment, which injures the surety in some way; mere failure or negligence on the part of the creditors will not relieve the surety. And the exceptions to the general rule will be found to be where the creditor omits to do something by which some collateral security in his hands is made unproductive, or where he is notified under the statute to proceed, and he fails or refuses; and if the letter of the statute on the subject of notice be extended to embrace proceedings after judgment, we think the security, in addition to the notice, should at least indemnify the creditor against the expenses of litigation: Code, section 2154; 3 Kelly, 53; 2 Simons, 457; 4 Johnson's Chancery Reports, 123; 8 Pick., 122; 37 Georgia Reports, 428." If the neglect by the judgment creditor for four years to levy upon real estate sold by the principal debtor to a purchaser, who holds possession until the real estate sold is discharged from the lien of the judgment, does not discharge the surety, we do not see how mere neglect by a judgment creditor to have his fi. fa. placed upon the execution docket, thereby permitting loss of the lien of the judgment on property sold to purchasers acting in good

faith and without notice by the principal and all of the sureties except one, can release the latter surety.

2.   Another ground of the illegality is as follows: "Because the surety on the stay bond is solvent, and as well the other securities who are named, the most of whom reside in Bryan county, and there has been no attempt to collect said fi. fa. out of any of the parties of Bryan county."   The remaining ground of the illegality tendered to the sheriff was: "Because the acceptance of the stay bond to said fi. fa. without the consent of this affiant renders the sureties thereon primarily liable therefor, and that the said security on said stay bond must be exhausted before this surety or his property is liable or subject to said fi. fa."   There is no merit in either of these grounds.   Where an execution is against a principal and sureties, the plaintiff may proceed against the property of either, at his option.   *Manry* v. *Shepperd, 57 Ga.* 68; *Jordan* v. *Farmers &c. Bank, 5 Ga. App.* 244 (62 S. E. 1024).   The surety on the stay bond was a surety for the principal and the sureties against whom the judgment was rendered.   There is no merit in any of the grounds of the affidavit of illegality, and the sheriff did right in rejecting the same and advertising the property for sale.   If the plaintiff has any remedy to arrest the sale of his property levied on under the fi. fa. against him as surety, because he is discharged by reason of the conduct of the plaintiff in fi. fa. and his attorney referred to in the application for injunction, or on any other ground referred to therein, his remedy is by an affidavit of illegality.   The affidavit of illegality filed with the sheriff had in it no ground sufficient to prevent the sale, and the sheriff did right in refusing to accept it.   The court committed no error in refusing the interlocutory injunction.

*Judgment affirmed.   All the Justices concur.*